Hogan, J.
Defendant moves for summary judgment, pursuant to rule 113 of the Rules of Civil Practice, dismissing the complaints of plaintiffs in both actions and granting judgment to him on his affirmative defenses and counterclaims which seek to restrain plaintiffs from interfering with what he claims to be a legal nonconforming use of his premises, as well as a judgment declaring the zoning ordinance unconstitutional and void insofar as it affects his property. The principal facts are undisputed.
Defendant, a dentist, purchased a residence on Rolling Hill Road, Manhasset, in 1946, thereafter engaging in the practice of dentistry in one portion of the house and residing with his family in the remaining portion. He still continues both uses at this time. Rolling Hill Road, on which the residences of the defendant and the plaintiff Lincoln are situated, is approximately fourteen feet wide. It winds through an established substantial community of one-family homes, which, although within a short distance of an intensely developed portion of Northern Boulevard known as “ the Miracle Mile ”, is completely self-contained and effectively screened from the business area. By reason of its narrowness the parking or standing of vehicles on said road is forbidden at all times.
Defendant, between 1946 and February 1, 1955, has rented office space in his house to a podiatrist and an orthodontist, both of whom continue to practice their professions there, while residing elsewhere. Other residents of the neighborhood complained to the town officials of this use, but were informed that in the opinion of its officials no violation existed.
On November 12, 1954, the defendant applied for a building permit to erect an extension, which he described as a “ Flat *230 roof brick veneer addition to residence for offices This was approved by the building department of the town, and a permit issued. The officials of the plaintiff town unquestionably were aware of the then existing and the proposed use of the premises. In fact, it appears that shortly after the permit was issued the defendant commenced advertising for professional tenants for this additional space.
On February 1, 1955, by which time the aforesaid extension was substantially completed, the town board held a public meeting, following which it amended the zoning ordinance of the town by limiting the use of residences by doctors and dentists (among others) to those “ in which said professional person resides * * * and in no case shall any dwelling be usetj for the practice or conduct of more than one profession nor by different types, specialties, fields or spheres for practice of the same profession. ’ ’ A certified copy of this resolution was served upon the defendant for the purpose of advancing its effective date as against him. He was then advised that any further extension of the occupancy of his building by professional people would be prosecuted.
Despite this the defendant apparently has completed his extension and appears to have leased the additional space to three other doctors, bringing the present total of professional occupants to six.
The Town of North Hempstead and one of his neighbors have now brought virtually identical actions to enjoin such use of his premises. Defendant’s answers, in addition to general denials seek a judgment declaring his right to use his premises in the aforesaid manner and restraining the town and the aforesaid neighbor from interfering with such use.
The resolution of the issues raised rests solely upon the proper interpretation of the pertinent provisions of the Building Zone Ordinance of the Town of North Hempstead.
Prior to February 1,1955, section 18.11 provided in substance that a lawyer, teacher, artist, architect, engineer, accountant or musician could maintain an office for the practice of his profession in the dwelling in which he resided.
Section 18.12 authorized the professional office of a doctor or dentist, if it was located in a dwelling, the remaining habitable floor area of which met the minimum requirements of the ordinance.
Unlike members of the other professions, a doctor or a dentist was not required to reside in the dwelling in which he maintained his office.
*231 Section 180.1 states that “ Words used in the present tense include the future and the future the present; the singular number includes the plural, and the plural the singular; the word lot ’ includes the word plot ’, as the sense may require it; the word shall ’ is always mandatory ”.
These sections of the ordinance were the apparent basis for the issuance of the building permit allowing the erection of additional offices, the town officials evidently having construed them as permitting any number of doctors or dentists to practice in a residence. It is well settled, however, that while the court may give weight to the interpretation of ordinances made by public officials, in a proper case he is at liberty to disregard them. (Vivien v. Board of Educ. Retirement System, 30 N. Y. S. 2d 73; Matter of Armitage v. Board of Educ., 122 Misc. 586.)
Considering the ordinance further, section 164.1 provides that an existing use, lawful on the effective date of the ordinance, or authorized by a building permit issued prior thereto may be continued as a nonconforming use.
Section 168.1 provides that if construction of a building shall be commenced before the effective date of the ordinance, no change in its construction or designated use shall be made necessary thereby, provided it shall have been completed within one year from said effective date.
On February 1, 1955, after work on defendant’s additional facilities was substantially completed, the town board adopted the amendment to sections 18.11 and 18.12 summarized above. If this amendment were controlling as to the defendant, his premises would be limited to the practice of but one profession, and to but one branch of that profession, by a person or persons residing therein. He claims, of course, to have established a legal, nonconforming use which survived the amendment.
The language chosen by the legislative body of the town appears on its face to be plain and unequivocal, and ordinarily this would suffice to find that the defendant’s contention is correct and proper. However, there are other well-established rules of construction which must he applied to these ordinances as well as that which requires a literal interpretation of the language whenever possible. The intent of the legislative body is the primary object to be sought, and to secure this object the literal meaning of the words used must yield. “ A thing which is within the letter of the statute is not within the statute unless it be within the intention of the lawmakers.”
The power to zone is given to the town board of the plaintiff town in order to promote the safety and general welfare of the *232 community, and to this end it may regulate the use of buildings for trade, industry, residence or other purposes (Town Law, § 261). The stated purposes of such regulations are “ to lessen congestion in the streets, to secure safety from fire, panic and other dangers; * * * to facilitate the adequate provision of transportation ’ ’, all with a view to the character of the district, and the conservation of the value of buildings. (Town Law, § 263.)
"When the plaintiff’s zoning ordinance is examined in the light of these goals, preordained by the New York State Legislature, it appears that if the interpretation of the ordinance contended for by the defendant may be accepted then the result obtained would be harmful, against public interest, and productive of a situation envisaged by the Court of Appeals in the case of Matter of Brous v. Smith (304 N. Y. 164).
When the amendments to sections 18.11 and 18.12 are considered in relation to the subject property they must be held to be entirely ineffective, because the defendant, acting under a building permit, had substantially completed his extension, and, if the permit were validly issued, had already acquired a vested right by the effective date of said amendments. Further, if defendant was enjoying a permitted use, he was protected in its continuation and extension by sections 164.1 and 168.1 of the ordinance, which controlled at all times.
The problem, then, is confined to section 18.12 as it existed prior to February 1, 1955, and also to section 180.1. Is it intended that the provision ‘ ‘ the singular number includes the plural ’ ’ applies indiscriminately throughout the entire ordinance? No one could seriously urge such a literal construction, for the result would be ridiculous and chaotic. “ The thought behind a rule proclaims itself misread when the outcome of the reading is injustice or absurdity.” (Matter of Finnegan v. Cohen, 177 Misc. 142, 143, affd. 262 App. Div. 955; see, also, Surace v. Danna, 248 N. Y. 18, 21; Matter of Zinn, 185 Misc. 604, and Goldner v. Savenue Realty Corp., 199 Misc. 561.)
If, then, it is not mandatory to apply this “ definition ” to section 18.12, should it be applied, or would its application produce an absurd, harmful or unreasonable result?
The presence of six doctors and/or dentists, each practicing a different branch of his profession, under a single roof, constitutes in fact what is popularly known as a “ medical center ’ ’. The advantages of such centers both to the practitioners and the public are many and obvious. However, such enterprises must be subject to some controls by the communities in which *233 they are sought to be located. One apparent need for regulation arises from the probability of traffic congestion. Defendant’s premises, occupied by six doctors and dentists, have parking room for exactly six cars in addition to the single garage which is attached to his house. It cannot be seriously contended that these facilities are adequate for the doctors and their patients even if their hours are staggered. The facilities cannot be enlarged at this time.
Still another effect of such a center is that it alters the essential character and the nature of a community such as this one to a degree which could not have been intended by the framers of the original ordinance in 1929. Further, if the defendant’s contention is correct, there is no legal limit upon the number of doctors and dentists to whom he could rent space in his home. Only the number of hours in the day and the point to which his building might be enlarged could bind him. Surely, this, too, was not within the contemplation of the lawmakers.
Applying logic and common sense to the ordinance, and considering the purposes for which it was enacted, the court must find that section 18.12, as it existed prior to February 1, 1955, authorized the professional office of a doctor or a dentist, and intended to permit but one doctor or dentist to practice his profession in a one-family residence in this use district.
It follows that the complaints of both plaintiffs upon their faces and upon the facts presented state good causes of action and cannot be dismissed.
It likewise follows that the first counterclaims of the defendant whereby he seeks to enjoin plaintiffs from interfering with his use of the property must fall. Plaintiffs, therefore, are entitled to judgment dismissing the first counterclaim in each answer, in accordance with the provisions of rule 113 of the Rules of Civil Practice, even in the absence of a cross motion therefor.
The second counterclaims, that the ordinance is confiscatory, unconstitutional, and constitutes “ spot zoning ”, present an issue for trial.
Settle order on notice.