■ FRANK P. WATSON, Appellant, v ROBERT M. ESPOSITO et al., Respondents. [647 NYS2d 233] —In an action to recover damages for medical malpractice, the plaintiff appeals from (1) a judgment of the Supreme Court, Nassau County (Alpert, J.), entered July 7, 1995, which, upon an order of the same court dated June 19, 1995, granting the defendants' respective motions to dismiss the action pursuant to CPLR 3126, and denying the plaintiff's cross motion, inter alia, to compel the defendants to complete his deposition, is in favor of the defendants and against him dismissing the complaint, and (2) an order of the same court dated October 30, 1995, which denied the plaintiff's motion, in effect, to reargue.

Ordered that the appeal from the order dated October 30, 1995, is dismissed, as no appeal lies from an order denying reargument; and it is further,

Ordered that the judgment entered July 7, 1995, is affirmed; and it is further,

Ordered that the respondents appearing separately and filing separate briefs are awarded one bill of costs.

The subject motion to dismiss the action due to the plaintiff's failure to comply with various discovery demands and orders was the fourth such motion in this action. The record indicates that the plaintiff delayed in complying with previous discovery orders, and that the plaintiff's responses to the defendants' notices for discovery and requests for authorizations, which notices and requests were served pursuant to a stipulation between the parties, were inadequate. In light of the plaintiff's

continued failure to comply with discovery demands absent judicial intervention, we find no improvident exercise of discretion in the dismissal of the action based on the plaintiff's failure to adequately comply with the terms of the stipulation (*see,* CPLR 3126; *Wolfson v Nassau County Med. Ctr.,* 141 AD2d 815). Bracken, J. P., Thompson, and Copertino, JJ., concur.

Goldstein, J., concurs in part, and dissents in part, and votes to dismiss the appeal from the order dated October 30, 1995, to reverse the judgment entered July 7, 1995, to vacate the order dated June 19, 1995, to deny the defendants' respective motions to dismiss the action pursuant to CPLR 3126, to grant the branch of the cross motion which was to compel the defendants to complete the plaintiff's deposition, and to remit the matter to the Supreme Court, Nassau County, to (1) determine whether there are any outstanding demands of the defendants which are not palpably improper, (2) direct the plaintiff to comply with any such demands within a specified period, and (3) schedule the completion of the plaintiff's deposition, with the following memorandum in which Pizzuto, J. concurs: An order of preclusion dated November 6, 1992, a preliminary conference order dated May 6, 1993, and an order dated December 3, 1993, directing the plaintiff to produce numerous authorizations were previously entered in the instant action. However, the defendants have acknowledged that the plaintiff "substantially complied" with those orders. As a result of his compliance, a prior motion to dismiss pursuant to CPLR 3126 was withdrawn.

On November 3, 1994, the defendants commenced the deposition of the plaintiff. At the deposition, the parties entered into a stipulation that the plaintiff would provide authorizations to obtain medical records from Blue Cross/Blue Shield, John Hancock Mutual Life Insurance Company, Dr. Mines, Dr. Burke, Dr. Lyons, and Town and Country Hospital. As part of that stipulation, the parties agreed that the defendants would be serving demands for "additional authorizations" based upon the plaintiff's deposition testimony by November 7, 1994. The stipulation was "So Ordered" by the court on or about December 12, 1994.

Although the stipulation only mentioned demands for "additional authorizations", in the period from November 4, 1994, until November 16, 1994, the various defendants served upon the plaintiffs: (1) a notice to produce demanding six items; (2) a notice for discovery and inspection demanding 24 items; (3) a demand for 18 authorizations; (4) a notice for discovery and inspection demanding 12 items; (5) a notice to produce demand-

ing six items; (6) a notice for discovery and inspection demanding 25 items; and (7) a demand for 11 authorizations. On or about December 19, 1994, well after the November 7, 1994, deadline in the stipulation, the defendant Dr. Varriale served upon the plaintiff a demand for 21 authorizations.

Thus, the defendants used the stipulation "So Ordered" by the court, wherein the plaintiff agreed to provide some additional authorizations based upon the plaintiff's deposition testimony, as an excuse to submit voluminous discovery demands, many of them duplicates of prior demands, including notices for discovery and inspection and notices to produce. Many of those demands were served after the November 7, 1994, deadline, and 21 authorizations were demanded over a month after the November 7, 1994, deadline. These demands are so extensive that they cannot be described in further detail here.

A certified copy of the plaintiff's deposition testimony was not served upon the plaintiff until January 17 or 18, 1995. Simultaneously therewith, a motion to dismiss the complaint pursuant to CPLR 3126 was made. The plaintiff cross-moved, *inter alia,* to compel the defendants to complete the plaintiff's deposition testimony, affirming that the records of Dr. Burke, Dr. Mines, and the "insurance companies and [his] employer" were previously supplied. In response, the remaining defendants separately moved to dismiss the complaint pursuant to CPLR 3126. The defendants' voluminous motion papers contained no clear and concise inventory of what discovery remained outstanding.

By letter dated March 20, 1995, the plaintiff transmitted authorizations for Dr. Lyons, and Town and Country Hospital, as well as Tampa General Hospital, and Adelphi University. The plaintiff further represented that most of the other items were previously supplied, or unavailable. He indicated that medical authorizations for one doctor would be provided, once he received verifying information. The plaintiff contended that a demand to produce "[i]nsurance forms, bills, documents, and papers used by plaintiff in preparation for his testimony at EBT", and "All documents invoices and bills regarding medical care and treatment in plaintiff's possession", were unduly vague and unclear. The 35-year-old plaintiff responded to multiple demands for the name and address of his parents without protest.

The defendants, in reply, argued that the plaintiff's failure to move for a protective order precluded him from challenging their demands, and that some of the plaintiff's responses were

inadequate. The thrust of the defendants' remaining arguments were that, although the plaintiff indicated that all medical authorizations had previously been provided or were being provided, the plaintiff had failed to provide each of the defendants with a copy of all authorizations demanded.

In dismissing the complaint pursuant to CPLR 3126, the court noted that CPLR 3126 authorizes dismissal of an action "when a discovery order is willfully disobeyed", thus recognizing the well-settled rule that the drastic remedy of dismissing an action pursuant to CPLR 3126 (3) should not be imposed unless there is noncompliance that is "willfull, contumacious, deliberate or in bad faith" (*Magrabi v City of New York,* 211 AD2d 422, 423; *see, Van Inwegen v Lucia,* 192 AD2d 834; *Hocevar v Honig Indus. Diamond Wheel,* 172 AD2d 588; *Bermudez v Laminates Unlimited,* 134 AD2d 314, 315). The court found that certain authorizations "*appear* to remain outstanding" (emphasis supplied), without identifying what remained outstanding. This is a telling omission, indicative of the confusion generated by the defendants' voluminous motion papers and discovery demands. Further, since the Supreme Court did not specify what authorizations were, in fact outstanding, its finding that a "discovery order [was] willfully disobeyed" was unsupported by any findings of fact.

The stipulation, assuming, arguendo, that it was properly converted into an order, was vague and indefinite, since it referred to "additional authorizations" which were not identified or identifiable at the time the stipulation was entered into. Therefore, the plaintiff could not be charged with a willful and contumacious violation of its provisions (*see, e.g., Matter of Department of Envtl. Protection v Department of Envtl. Conservation,* 70 NY2d 233; *Matter of Holtzman v Beatty,* 97 AD2d 79). Further, the terms of the stipulation only authorized additional demands for authorizations, and not the demands for discovery and inspection and document production served by the defendants.

The defendants argue that a court may dismiss an action based upon the failure to comply with a simple discovery demand and that a court order directing compliance is not a prerequisite to such relief (*see, Wolfson v Nassau County Med. Ctr.,* 141 AD2d 815). However, in such a situation, this remedy is used sparingly where there is a total failure to respond for an extended period (*see, Wolfson v Nassau County Med. Ctr., supra; Van Wert v Green-Pepper,* 151 AD2d 839). Further, the dismissal can be conditional, to take effect only upon a failure to comply by a date specified in the order, thus giving the

plaintiff an additional opportunity to comply (*see, Adinolfi v Adinolfi*, 168 AD2d 401; *Goldner v Lendor Structures*, 29 AD2d 978). In the instant case, the plaintiff made substantial good-faith efforts to comply with the defendants' voluminous demands, and, in fact, complied with a substantial number of them (*see, Harris v City of New York*, 211 AD2d 663), although the demands for discovery and inspection and document production were not authorized by the terms of the parties' stipulation. Nevertheless, the order directing dismissal of the action was unconditional.

Although the plaintiff did not move for a protective order, he could still refuse to respond to demands which were " 'palpably improper' " (*Lestingi v City of New York*, 209 AD2d 384, 385). Material is "palpably improper" if it is of a confidential and private nature, and irrelevant to the issues in the case (*Holness v Chrysler Corp.*, 220 AD2d 721; *Zimmer v Cathedral School of St. Mary & St. Paul*, 204 AD2d 538), or overbroad (*see, Holness v Chrysler Corp., supra; Zambelis v Nicholas*, 92 AD2d 936). Income tax records or medical records not relevant to the case can be deemed "palpably improper" (*Zimmer v Cathedral School of St. Mary & St. Paul, supra*, at 539). In the instant case, the disputed demands involved tax records and an overbroad demand for "*All* documents invoices and bills regarding medical care and treatment in plaintiff's possession" and "[i]nsurance forms, bills, documents, and papers" (emphasis supplied) (*see, Zambelis v Nicholas, supra*). In any case, these demands for document production were not authorized by the terms of the parties' stipulation.

Moreover, with respect to disputed demands in a notice for discovery and inspection, CPLR 3122 was amended, effective January 1, 1994, to cast the burden on the party seeking discovery to move to compel discovery pursuant to CPLR 3124 (*see, Cecunjanin v Rock McGraw, Inc.*, 209 AD2d 571). Instead of moving pursuant to CPLR 3124, the defendants moved to dismiss pursuant to CPLR 3126 at the earliest opportunity.

Indeed, it appears from this record that the defendants were using their rights to disclosure pursuant to CPLR article 31 as a sword, to force the dismissal of the action. Any interest they may have had in compliance with their discovery demands appears to be purely secondary, and even irrelevant, since their ultimate goal which was accomplished, was dismissal. Such abusive conduct cannot be countenanced.