D'Alessandro v Kushner (2024 NY Slip Op 50903(U))

[*1]

D'Alessandro v Kushner

2024 NY Slip Op 50903(U)

Decided on July 12, 2024

Supreme Court, New York County

Reed, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 12, 2024
Supreme Court, New York County

David D'Alessandro, JASON D'ALESSANDRO, CLD, LLC, ADVANCED ROYAL TRACKING, LLC, and SMALL VENTURES USA, LP, Plaintiffs,

against
David Kushner and LA MANCHA FUNDING CORP., Defendants.

Index No. 650006/2021

Attorneys for Plaintiffs:
Matthew S. Dontzin, Esq. of DONTZIN NAGY & FLEISSIG LLP
David A. Fleissig, Esq. of DONTZIN NAGY & FLEISSIG LLP
Attorneys for the Defendants:
Erin K. Flynn, Esq. of CLAIR & GJERTSEN, ESQS.

Robert R. Reed, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 40, 64 were read on this motion for SUPERVISION OF DISCLOSURE.
This action arises from defendants' alleged mismanagement of loans extended by plaintiffs to certain borrowers, most of whom are now in default. In motion sequence number 001, plaintiffs move pursuant to CPLR 2308, 3124, and 3126 for an order (1) compelling defendants to comply with the requests for documents and information dated February 22, 2021 and November 29, 2021, (2) finding that defendants have waived any objections, (3) striking defendants' answer, and (4) awarding plaintiffs costs, penalties and damages sustained due to defendants' failure to comply with the requests. Defendants cross move pursuant to CPLR 3103 for an order preventing plaintiffs from seeking discovery related to defendants' family members related to settlement discussions or related to any pending criminal cases. For the reasons set forth herein, the motion is granted in part and the cross-motion is granted in part.
I. BACKGROUND
On January 1, 2021, plaintiffs commenced this action, alleging that, in or about September 2018, defendant David Kushner, as President of La Mancha Funding Corp. (La Mancha), induced plaintiffs to invest millions of dollars in twenty-three different limited liability companies, which, in turn, provided loans to twenty-four professional athletes and sports agents. Many of these borrowers turned out to have criminal records and ultimately defaulted in their obligations. Plaintiffs also allege that Kushner misappropriated and mismanaged funds arising from the payments received from the borrowers.
In the complaint, plaintiffs assert six causes of action for (1) breach of contract, (2) breach of fiduciary duty, (3) conversion, (4) negligence, (5) fraud, and (6) for an accounting.
During discovery, plaintiffs sent defendants a First Request for the Production of Documents on February 22, 2021. Defendants made some production of documents responsive to those demands on April 12 and 23, 2021. As part of their production, defendants served on plaintiffs a privilege log, asserting privilege over more than 100 emails between Kushner and Brian Berlandi, an attorney who served as escrow agent for the loans. In addition, defendants failed to produce any communications prior to November 6, 2018, despite the fact that the events and transactions at issue in this case began in September 2018 and that La Mancha was incorporated on September 6, 2018 and made a loan of $1 million on September 10, 2018. On April 29, 2021, plaintiffs asked Kushner to confirm he had searched his personal email accounts for documents from before November 2018, and, if no responsive documents were found, to "provide a detailed list of email accounts, devices, and physical locations that you searched along with any search terms you applied." Defendants did not respond.
Plaintiffs then served a Second Request for the Production of Documents on November 29, 2021, demanding documents relating to emails plaintiffs received from certain third party individuals who represented that they were interested in purchasing plaintiffs' loans. Defendants responded on February 11, 2022, stating that they had no documents relating to these individuals or any efforts at settlement of the case.
According to a letter from new counsel for defendants, defendant Kushner's wife had been seriously ill during the period in which the parties were engaged in discovery; and this was partly to blame for defendants' failure to proceed with document production.
Plaintiffs filed the instant motion on March 15, 2022. Defendants cross-moved on April 12, 2022.
Notably, on November 1, 2022, defendants' counsel filed a motion (seq. no. 003) by order to show cause, requesting to be relieved as counsel for defendants, citing Kushner's failure [*2]to communicate, engage in discovery, or assist in his defense (see NYSCEF doc. no. 58). The court granted the motion, and counsel was relieved on June 30, 2023. New counsel for defendants, the Law Firm of Kenneth Allen Brown, PLLC, entered a notice of appearance on December 21, 2023.

 II. DISCUSSION
1. To compel
Pursuant to CPLR 3101 (a), parties must make "full disclosure of all matter material and necessary in the prosecution or defense of an action." Upon a motion to compel disclosure pursuant to CPLR 3124, the party seeking disclosure must demonstrate that "'the method of discovery sought will result in the disclosure of relevant evidence or is reasonably calculated to lead to the discovery of information bearing on the claims'" (Abrams v Pecile, 83 AD3d 527, 528 [1st Dept 2011], quoting Vyas v Campbell, 4 AD3d 417, 418 [2d Dept 2004]).
Plaintiffs adequately demonstrate that several of the documents they demanded are "material and necessary in the prosecution" of their claims (CPLR 3101 [a]). Documents prior to November 6, 2018 relating to the loans and containing communications with Berlandi (see exhibit 1 nos. 11, 18-19, 35) will plainly be relevant to prosecution of plaintiffs' claims regarding the loans. Likewise, documents and information related to investigations of defendants by the SEC or other regulatory agencies are likely to lead to the discovery of relevant information. In addition, information regarding defendants' efforts to search for documents relating to the requests above, including what sources they searched, and regarding other individuals who may have relevant information is "reasonably calculated" to lead to the discovery of evidence relevant to the claims (Abrams v Pecile).
In opposition, defendants do not dispute that these materials are relevant and material to the claims in the complaint. Instead, defendants represent that defendants' delay in responding was due to "unforeseen family circumstances" and that "any deficiencies in responding will be rectified shortly" (defendants' brief in opposition to plaintiffs' motion and in support of defendants' cross-motion at 2). According to plaintiffs' letter dated March 16, 2023 (see NYSCEF doc. no. 64), defendants have yet to do so, and the counsel that made the representation has since withdrawn from the case. To date, even after the appearance of new counsel, there has been no representation by the parties that the deficiency has been rectified. Defendants are ordered to correct the deficiency.
The court notes that, although defendants previously objected to plaintiffs' demands by asserting the attorney-client privilege, particularly with respect to communications with Berlandi and documents relating to regulatory investigations, they have not raised the privilege in opposition to this motion. It bears reminder that "[t]he burden of establishing that the documents sought are covered by a certain privilege rests on the party asserting the privilege" (Anonymous v High Sch. for Envtl. Studies, 32 AD3d 353, 359 [1st Dept 2006]). Defendants have made no effort to meet their burden here.
Plaintiffs have also demanded documents or information relating to certain third parties' proposal to purchase the loans from plaintiffs, who may or may not have been fictitious. Nevertheless, whether or not these emails were indeed, as plaintiffs assert, part of a "ruse concocted by [d]efendants to unfairly delay this litigation" (plaintiffs' brief in support at 2), the information would have no bearing on the claims brought in this action and are thus outside the scope of CPLR 3101 (a).
2. For sanctions
CPLR 3126 authorizes the court to sanction a party who "refuses to obey an order for disclosure or wilfully fails to disclose information which the court finds ought to have been disclosed." It is "axiomatic that the imposition of CPLR 3126 sanctions is within the sound discretion of the court" and courts are empowered to "make such orders with regard to the refusal or failure as are just" (Gross v Edmer Sanitary Supply Co., 201 AD2d 390, 390 [1st Dept 1994]). A failure to comply with discovery, particularly after a court order has been issued, may constitute the "dilatory and obstructive, and thus contumacious, conduct warranting the striking of its answer" (Pigott v J.C. Happy Garden Corp., 216 AD3d 413, 414 [1st Dept 2023]). However, "[s]triking an answer . . . is a drastic penalty used sparingly because of our strong policy aimed at determining actions on their merits" (Croce v Abraham & Straus, 123 AD2d 561, 562 [1st Dept 1986]).
Here, defendants' conduct, though dilatory and uncooperative at times, does not rise to the level of contumacious conduct. For example, plaintiffs have not described any instance in which defendants failed to produce documents despite a direct court order to do so (see, e.g., Pigott). It is also plausible that the asserted illness of Kushner's wife had some effect in causing the delays in production. Under the circumstances, the "drastic penalty" of finding a waiver of objections or striking defendants' answer is unwarranted, in light of the courts' preference for "determining actions on their merits" (Croce v Abraham & Straus). For the same reasons, the court does not find sufficient cause for financial sanctions.
3. Defendants' motion for protective order
In their cross-motion, defendants seek to prevent plaintiffs from seeking discovery related to defendants' family members related to settlement discussions or related to any pending criminal cases.
CPLR 3103 (a) "permits a court to issue a protective order denying, limiting, conditioning or regulating the use of any disclosure device where necessary to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts" (Liberty Petroleum Realty, LLC v Gulf Oil, L.P., 164 AD3d 401, 403 [1st Dept 2018]). "An individual or entity who seeks a protective order bears the initial burden to show either that the discovery sought is irrelevant or that it is obvious the process will not lead to legitimate discovery" (id.) Once this burden is met, the opposing party must "establish that the discovery sought is 'material and necessary' to the prosecution or defense of an action, i.e., that it is relevant" (id.). Furthermore, when the individual seeking a protective order asserts attorney-client privilege, "the burden of establishing any right to protection is on the party asserting it; the protection claimed must be narrowly construed; and its application must be consistent with the purposes underlying the immunity" (id. at 404 [alterations and citations omitted]).
First, with respect to documents regarding Kushner's son, defendants argue that plaintiffs' demands are intended only to harass Kushner. However, defendants put forth no proof or argument demonstrating that the demands are frivolous or irrelevant, much less intended to harass. Moreover, it is plausible that such demands may lead to the discovery of relevant information. While plaintiffs represent that they do not seek such information, defendants have the burden to establish their entitlement to a protective order (see Liberty Petroleum Realty, LLC). Therefore, defendants' request to this extent is denied.
Second, defendants argue that plaintiffs are not entitled to documents regarding [*3]"settlement negotiations that failed"—presumably referring to documents relating to the purported offers by third parties to purchase plaintiffs' loans. Herein, the court has found that these demands are immaterial to any of plaintiffs' claims. Neither have plaintiffs offered an explanation for their relevance other than that they indicate defendants may have manufactured fictitious people for the purpose of avoiding discovery obligations. Therefore, the court orders that plaintiffs are precluded from seeking discovery relating to these communications.
Regarding the demands for communications regarding investigations by the SEC and other regulatory agencies, defendants fail to provide any proof or legal authority to show that these should be protected by any privilege (see Anonymous v High Sch. for Envtl. Studies). Defendants fail to carry their burden, and their application to this extent is denied.
Accordingly, it is hereby
ORDERED that plaintiffs' motion is granted in part, to the limited extent that defendants are ordered to produce the following documents and information responsive to plaintiffs' First and Second Requests for the Production of Documents:
1. Documents prior to November 6, 2018 relating to the loans and containing communications with Berlandi;
2. Documents and information related to investigation of defendants by the SEC or any other regulatory agencies; and
3. Information on defendants' efforts to search for documents, including what sources they searched;
4. Information regarding other individuals who may have relevant information; and it is further
ORDERED that plaintiffs' motion is, in all other respects, denied; and it is further
ORDERED that defendants' motion is granted to the limited extent that plaintiffs are precluded from seeking discovery of communications relating to the purported offers of settlement by third parties that were previously demanded in the Second Request for the Production of Documents, Nos. 1-8; and it is further
ORDERED that defendants' motion is, in all other respects, denied.
DATE July 12, 2024
ROBERT R. REED, J.S.C.